UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
U.S. COURTHOUSE
402 E. STATE STREET
TRENTON, NEW JERSEY 08608

Hon. Michael B. Kaplan                                                                                       609-989-0478
United States Bankruptcy Judge                                                                       609-989-2259 Fax

August 9, 2012

Meaghan Tuohey-Kay, Esq.
Law Office of Meaghan Tuohey-Kay
532 Lafayette Ave.
Hawthorne, New Jersey 07506
Attorney for Defendants SCS Realty Investment Group, LLC
and Richard Schlott

Daniel M. Eliades, Esq.
Forman Holt Eliades Ravin & Youngman, LLC
80 Route 4 East, Suite 290
Paramus, New Jersey 07652
Attorney for Plaintiff Better Homes and Gardens Real Estate, LLC

> Re: Better Homes and Gardens Real Estate LLC v. Mary Holder Agency, Inc., *et al*
>
> Case No. 11-34280 (MBK)
> Adv. Proc. No.: 11-2437 (MBK)

Counselors:

This matter is before the Court upon the motion ("Motion") of SCS Realty Investment Group, LLC ("SCS") and Richard Schlott ("Schlott") (collectively the "Defendants") for partial summary judgment on Count 10 (Tortious Interference), Count 11 (Civil Conspiracy), Count 12 (Conversion), Count 13 (Unjust Enrichment), and Count 14 (Constructive Trust) of Better Homes and Gardens Real Estate, LLC's ("BH&G") adversary complaint (the "Complaint"). The Court has reviewed the pleadings submitted and entertained oral argument on July 27, 2012. The Court issues the following ruling:

**I.     Jurisdiction**

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(b), 1334(e)(1), 157(a) and the Standing Order of the United States District Court dated July 10, 1984, referring all bankruptcy cases to the bankruptcy court. With the exception of claims against the Debtor, none of the causes of action against the non-debtor defendants are core proceedings.[1] Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and 1409. The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.[2]

**II.    Background**

BH&G operates a national franchise system in the United States that provides real estate brokerage services. In 2009, BH&G entered into a franchise agreement and related agreements (collectively, the "Franchise Agreement") with Mary Holder Agency, Inc. ("MHA" and the "Debtor"), pursuant to which the MHA was authorized to operate seven real estate brokerage offices in New Jersey under the trade name of "Better Home and Gardens"®. Mary Holder, the sole shareholder of MHA, guaranteed the obligations of MHA to BH&G under the Franchise Agreement by executing a promissory note and security agreement. The security agreement

---

[1] These matters do not fall within the enumerated proceedings designated as "core" under 28 U.S.C. § 157(b) and neither: (1) invoke a substantive right provided by title 11 nor (2) could the proceedings arise only in the context of a bankruptcy case. See In re USDigital, Inc., 461 B.R. 276, 285 (Bankr. D. Del. 2011). The Court has substantial reservations as to whether resolution of the instant matter would have any measurable impact on this bankruptcy estate and thus queries whether the action should remain pending in this forum. As such, the Court will schedule a status conference to discuss this issue.

[2] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

defined the collateral securing the debt as including "contract rights . . . commissions, real estate listing, and listing agreements . . . and general intangibles." MHA also entered into agreements with its real estate agents (the "Agent Agreements") which provided that the real estate listings from homeowners (the "MHA Listings") were property of MHA. The Agent Agreements further provided that the MHA Listings would be retained by MHA if the agent's affiliation with MHA was terminated.

In spring of 2011, the Debtor breached the Franchise Agreement by failing to make payments on its obligations under the promissory note. MHA failed to cure its defaults and BH&G terminated the Franchise Agreement on or about July 25, 2011 (the "Termination Date"). BH&G contests the Termination Date.[3] BH&G claims that prior to the Termination Date, MHA was approached by Schlott, the CEO of co-defendant SCS, regarding a potential acquisition of certain or all of the assets of MHA. BH&G further asserts that Schlott met with co-defendants George Holder and/or Peter Zanowic to discuss leaving MHA for SCS. In addition, BH&G claims that the Defendants induced the MHA agents to join SCS by advising them that the MHA Listings could be unconditionally terminated and released by MHA, and then later relisted by the agents upon their new affiliation with SCS.

After the Franchise Agreement was terminated, BH&G demanded that MHA cease using any document which contained any BH&G mark or in any way indicated that that MHA was associated with BH&G, and to notify all clients of the termination of the relationship. As a result, the MHA Listings and Agent Agreements were terminated by MHA. Shortly thereafter, a majority of the MHA agents joined SCS, bringing with them many of the MHA listings which

---

[3] BH&G claims that the Franchise Agreement was terminated on July 28, 2011.

3

were then relisted with SCS. The Defendants maintain that at no time did BH&G offer to purchase, assume, or service any of the MHA Listings or other associated agreements.

On August 15, 2011 (the "Petition Date"), MHA filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq*. MHA's Chapter 11 Bankruptcy case was thereafter converted to a Chapter 7. On November 4, 2011, Mary Holder filed an individual Chapter 11 case. On February 1, 2012, BH&G filed a non-dischargeability complaint against Mary Holder asserting the same wrongful and tortious conduct alleged in the Complaint. The Motion herein seeks partial summary judgment on, and dismissal of, the following counts of the Complaint: Count 10 (Tortious Interference); Count 11 (Civil Conspiracy); Count 12 (Conversion); Count 13 (Unjust Enrichment); and Count 14 (Constructive Trust). For the reasons which follow, the Court denies the Defendants' Motion without prejudice.

### III. Discussion

#### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery, and disclosure materials on file, and any affidavits show there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[4] As the

---

[4] Federal Rule of Civil Procedure 56 was amended as of December 1, 2010. As noted by the court in Guiliano v. Coy (In re Coy):

> Subdivision (a) now contains the summary judgment standard previously stated in subdivision (c). Fed. R. Civ. P. 56 Advisory Committee's Note to 2010 Amendments ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word—genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination.").

2011 Bankr. LEXIS 3196, *6-7 (Bankr. D. Del. Aug. 22, 2011).

Supreme Court has indicated, "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (citing Fed. R. Civ. P. 1). In deciding a motion for summary judgment, the judge's function is to determine if there is a genuine dispute for trial. Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. Huang v. BP Amoco Corp., 271 F.3d 560, 564 (3d Cir. 2001) (citing Celotex Corp., 477 U.S. at 323). In determining whether a factual dispute warranting trial exists, the court must view the record evidence and the summary judgment submissions in the light most favorable to the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Issues of material fact are those "that might affect the outcome of the suit under the governing law." Id. at 248. An issue is genuine when it is "triable," that is, when reasonable minds could disagree on the result. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted). If the moving party will bear the burden of persuasion at trial, the party must support its motion with credible evidence - using any of the materials specified in Rule 56(c) - that would entitle it to a directed verdict if not controverted at trial. Celotex Corp., 477 U.S. at 331. Such an affirmative showing shifts the "burden of production" to the party opposing the motion and requires the party to either demonstrate the existence of a "genuine [dispute]" for trial or to request additional time for discovery under Fed. R. Civ. P. 56(f). Fed. R. Civ. P. 56(e).

Once the moving party establishes the absence of a genuine dispute of material fact, the burden then shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(e) (providing that in response to a summary judgment motion the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine [dispute] for trial"). See also Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982); Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir. 1972). If the nonmoving party's evidence is a mere scintilla or is not "significantly probative," the court may grant summary judgment. Liberty Lobby, Inc., 477 U.S. at 249-50. The non-movant will prevail only if the evidence produced is of "sufficient quantum and quality" to allow a rational and fair-minded fact finder to return a verdict in his favor, bearing in mind the applicable standard of proof that would apply at trial on the merits. Id. at 249.

### B. The Defendants' Motion is Denied Without Prejudice

After considering the arguments put forth by the parties, the Court finds that there are genuine disputes of material fact, in addition to procedural defects, that prevent the Defendants from prevailing on their Motion. As to the procedural deficiencies, the Court finds that the Motion improperly relies solely upon a Memorandum of Law that contains uncertified and

6

unsubstantiated factual assertions that are not supported by an affidavit from a person with personal knowledge as to the facts attested to therein. See Fed. R. Civ. P. 56(C). Furthermore, the Motion does not contain a Statement of Material Facts as required by Local Civil Rule of Procedure 56.1. See L. Civ. R. 56.1. Additionally and as already discussed, even if the Court were inclined to grant summary judgment, the Court would not have the authority to do so because the claims addressed in the Motion are non-core. See 28 U.S.C. §§ 157(c)(1). Accordingly, the Motion is denied without prejudice to allow for further discovery to flesh out the various issues discussed below.

> **1. There are disputes of material fact concerning whether prior to the MHA Agents joining SCS, the Defendants tortuously interfered with BH&G's contractual relationship with MHA by advising MHA, its managers, and agents to terminate the MHA Listings and the Agent Agreements.**

The Defendants maintain that Count 10 (Tortious Interference) of the Complaint should be dismissed because BH&G failed to identify any act committed by the Defendants that interfered with the contractual relationship between BH&G and MHA. To succeed on a claim for tortious interference, a plaintiff must demonstrate: (1) actual interference with a contract; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage. Dello Russo v. Nagel, 358 N.J. Super. 254, 268 (App. Div. 2003). The Court finds that there are disputes of fact concerning whether the Defendants had knowledge of BH&G's security interest in the MHA Listings and the MHA agents' current and future commissions, prior to the termination of the Franchise Agreement. The Court further finds that that are disputes of fact

7

regarding the Defendants' conduct and participation if any, relative to MHA's decision to terminate the Listing Agreements and Defendants' decision to enter into any agreements with MHA's former agents and employees. Therefore, further discovery is warranted to determine whether, as BH&G has pleaded, the Defendants solicited and/or acted in concert with MHA, its managers, and agents to terminate the MHA Listings and Agent Agreements prior to the termination of the Franchise Agreement. As such, summary judgment is denied as to Count 10 (Tortious Interference) of BH&G's complaint.

### 2. There are disputes of material fact concerning whether the Defendants conspired with MHA to undermine BH&G's collateral.

The Defendants assert that Count 11 (Civil Conspiracy) of BHG's complaint should be dismissed because the complaint does not allege any unlawful means or purpose with respect to the Defendants' employment of former MHA agents, and its acquisition of the Agent Listings. Under New Jersey law, to establish a prima facie case for civil conspiracy a plaintiff must demonstrate "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177 (2005). As stated above, the Court has questions regarding whether the Defendants and MHA reached an agreement, prior to the termination of the Franchise Agreement, for MHA's agents and managers to join SCS and to terminate the MHA Listings and Agent Agreements. While the Defendants raise an interesting point that the MHA Listings would have expired on their own---eventually permitting the agents to seek new employment elsewhere---granting further discovery would assist this Court [or any

8

other tribunal] in reconciling what actions by the Defendants, if any, caused the termination of the MHA Listings and Agent Agreements. Therefore, the Court denies summary judgment as to Count 11 (Civil Conspiracy) of BH&G's complaint.

### 3. There are disputes of material fact concerning whether the Defendants exercised wrongful dominion or control over the MHA Listings.

The Defendants assert that Count 12 (Conversion) should be dismissed because the Defendants never took legal title to the MHA Listings. To succeed on a claim for conversion, a plaintiff must establish "wrongful exercise of dominion or control over property of another without authorization and to the exclusion of the owner's rights in that property." Chicago Title Ins. Co. v. Ellis, 409 N.J. Super. 444, 456 (App. Div. 2009). The plaintiff is not required, however, to prove that the defendant intended to harm the rightful owner or that the defendant knew that the property belonged to another. Ellis, 409 N.J. Super. at 456.

The Defendants argue that BH&G's claim for conversion must fail because the MHA Listings were terminated prior to the Defendants acquisition of the commissions therefrom, and therefore, they could not have taken legal title of them. Again, a dispute of fact arises regarding whether the Defendants intended to exercise dominion or control over the MHA Listings, inconsistent with BHG's rights, when they acquired the listings from the former MHA agents. Therefore, the Court denies summary judgment as to Count 12 (Conversion) of BH&G's complaint.

### 4. There are disputes of material fact concerning whether the Defendants were unjustly enriched when they received proceeds from the MHA Listings.

BH&G alleges in Count 13 (Unjust Enrichment) of the Complaint that SCS retained and obtained the benefit of the use of BH&G's collateral and the proceeds therefrom. The Complaint further alleges that SCS's wrongful retention of BH&G's collateral without paying BH&G the debts owed would be unjust. "The doctrine of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." Goldsmith v. Camden County Surrogate's Office, 408 N.J. Super. 376, 382 (App. Div. 2009). A plaintiff can prove unjust enrichment by demonstrating that the defendant received a benefit, and that retention of that benefit without payment would be unjust. Goldsmith, 408 N.J. Super. at 382. While unjust enrichment is the basis for a claim of quasi-contractual liability, courts have recognized that a claim for unjust enrichment "may arise outside the usual quasi-contractual setting." 408 N.J. Super. at 382.

The Defendants argue that they cannot be found liable for unjust enrichment because there was no contractual relationship between BH&G and the Defendants, nor was there a benefit conferred upon them. As a result, the Defendants assert that BH&G could not expect any remuneration from them when they acquired the MHA Listings. As previously discussed, there are factual disputes concerning whether BH&G was entitled to any of the proceeds stemming from the MHA Listings after the Franchise and Agent Agreements were terminated. If it is established through discovery that the MHA Listings remained the property of BH&G, even after the termination of the Franchise and Agent Agreements, BH&G could maintain a claim for

unjust enrichment. Therefore, the Court denies summary judgment as to Count 13 (Conversion) of BHG's complaint

> **5. There are disputes of material fact regarding whether the Defendants committed a wrongful act when acquiring the MHA Listings and whether any proceeds therefrom should be held in constructive trust.**

The Defendants contend that Count 14 (Constructive Trust) of the Complaint should be dismissed and that there is no basis for the imposition of a constructive trust because the Defendants did not commit a wrongful warranting the imposition of a constructive trust. For the Court to impose a constructive trust, the moving party must demonstrate that: 1) a party has committed a wrongful act; and 2) the wrongful act must result in a transfer or diversion of property that unjustly enriches the recipient. Flanigan v. Munson, 175 N.J. 597, 608 (2003). The Defendants claim that the MHA Listings were not relisted with SCS until after they were terminated by MHA. As previously stated, there are factual disputes concerning whether BH&G was entitled to any of the proceeds stemming from the MHA Listings after the Franchise and Agent Agreements were terminated, and whether the Defendants engaged in wrongful conduct in "wooing" former MHA agents. Accordingly, the Court denies summary judgment as to Count 14 (Constructive Trust) of the Complaint.

### IV. Conclusion

In light of the foregoing, the Court denies the Defendants' Motion without prejudice. BH&G is directed to submit a form of order reflecting the Court's rulings.

_____
Honorable Michael B. Kaplan
United States Bankruptcy Judge

Dated: August 9, 2012